

# THE ATTORNEY GENERAL
## OF TEXAS

December 20, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable James M. Kuboviak            Opinion No. JM-996
County Attorney
Brazos County                         Re:     Construction of term
300 E. 26th St., Suite #325           "actual  costs"  in  section
Bryan, Texas  77803                   6.27 of the Tax Code, and
                                      related questions
                                      (RQ-1478)

Honorable Janelle Haverkamp
County Attorney
Cooke County
Gainesville, Texas  76240

Dear Mr. Kuboviak and Ms. Haverkamp:

There are three situations in which a county might assess, collect, or assess and collect taxes for other taxing units in the county. First, a county might do so if the qualified voters by petition and election require the county to do so, pursuant to section 6.26 of the Tax Code. In that instance, the charge for performing such services is governed by subsection 6.26(g) of the code, which provides: "A taxing unit shall pay <u>the actual cost of performance of the functions</u> to the office or entity that performs functions for it pursuant to an election as provided by this section." (Emphasis added.) Second, a county may assess or collect taxes for other taxing units in that county if the governing bodies enter into an Interlocal Cooperation Act contract, pursuant to section 6.24 of the code. Neither section 6.24 of the code nor the Interlocal Cooperation Act itself, article 4413(32c), V.T.C.S., specify that charges may be made for the performance of such services; they are both silent on the matter. Third, a county may assess or collect taxes for another taxing unit in that county if it is required to do so by law. It is this last situation with which you are concerned, and it is governed by section 6.27 of the Tax Code.

You ask first about the proper method for determining the "actual costs" incurred under section 6.27 of the code when the county tax assessor-collector assesses and collects

ad valorem taxes  for another  taxing unit,  as required  by law.    You    also    ask   whether    the    county    tax assessor-collector, the county  commissioners court, or  the governing body of  the taxing unit  for which such  services are performed is empowered to make such a determination.

Specifically, Mr. Kuboviak asks:

> Does the  phrase "actual  costs" pursuant  to Section 6.27 of the  Texas Property Tax  Code indicate that  particular  cost which  is  in addition  to  existing  costs  of  collecting taxes for the county?

We conclude that the phrase "actual costs" set forth in section 6.27 of the Tax Code refers to those costs that  the collecting taxing unit or appraisal district incurs over and above  that  cost  that  it  would  incur  if  it  were  not collecting for another taxing unit.[1]

Section 6.27 of the  Tax Code governs the  compensation that may be  imposed by a  county for performing  "assessing and  collecting"  services  for  another  taxing  unit  and provides the following:

(a) [Repealed]

---

1.    We note that if the county tax  assessor-collector assesses  and/or  collects  pursuant   to  a  section  6.26 consolidation election, the fee that  may be charged is  set forth in subsection (g) of section 6.26:

> A taxing unit shall pay the actual cost of performance of the functions of the office or entity that performs functions for it  pursu-ant  to  an  election  as  provided  by  this section.  (Emphasis added.)

We construe  the meaning  of the  phrase "actual  cost"  set forth in section  6.26 of the  Tax Code to  be identical  to that of the phrase "actual costs" set forth in section  6.27 of the code.   See, e.g., Paddock  v. Siemoneit, 218  S.W.2d 428 (Tex. 1949); Greenwood  v. City of  El Paso, 186  S.W.2d 1015 (Tex. Civ. App.  - El Paso 1945, no writ).   (Language repeatedly used in  statute will  be presumed  to have  same meaning throughout, unless context shows another meaning  is intended.)

(b) The county assessor-collector is entitled to a reasonable fee, which may not exceed the actual costs incurred,[2] for assessing and collecting taxes for a taxing unit pursuant to Subdivisions (1) through (3) of Subsection (a) of Section 6.23 of this code.

(c) The assessor or collector for a taxing unit other than a county is entitled to reasonable compensation, which may not exceed the actual costs incurred, for assessing or collecting taxes for a taxing unit pursuant to Subsection (b) of Section 6.23 of this code. (Emphasis added.)

Section 6.23 of the code permits, and in some cases requires, the county tax assessor-collector to assess and/or collect taxes for other taxing units:

(a) The county assessor-collector shall assess and collect taxes on property in the county for the county. He shall also assess and collect taxes on property for another taxing unit if:

(1) the law creating or authorizing creation of the unit requires it to use the county assessor-collector for the taxes the unit imposes in the county;

---

2. In spite of the phrase "which may not exceed the actual costs incurred," we do not construe section 6.27 to permit a county tax assessor-collector to impose a fee that is _less_ than the actual costs incurred. _See_, _e.g._, _San Antonio Indep. School Dist. v. Board of Trustees of San Antonio Elec. & Gas System_, 204 S.W.2d 22 (Tex. Civ. App. – El Paso 1947, writ ref'd n.r.e.); Tex. Const. art. III, §§ 51, 52; Attorney General Opinions H-1018 (1977); V-953 (1949); _see also_ Acts 1987, 70th Leg., H.J.R. No. 83, §1, at 4127 (text of proposed constitutional amendment that failed to receive voter ratification, which would have permitted a county to, _inter alia_, use county personnel to perform work without compensation for another governmental entity under certain conditions).

(2) the law creating or authorizing creation of the unit does not mention who assesses and collects its taxes and the unit imposes taxes in the county;

(3) the governing body of the unit requires the county to assess and collect its taxes as provided by Subsection (c) of Section 6.22 of this code; or

(4) required by an intergovernmental contract.[3]

We understand you to ask whether "actual costs" means the additional costs a county incurs for performing services for another taxing unit, over and above the costs that it would incur were it assessing or collecting only for itself, or whether it means the cost that the contracting taxing unit would itself incur if it were performing the functions for itself. Perhaps an example will clarify your question. Assume that a county incurs a cost of $3.75 per parcel for assessing and collecting taxes on property on its own tax roll, while an independent school district located within the county incurs a cost of $4.00 per parcel for property on its own tax roll. Assume further that the county could assess and collect taxes for the independent school district for an additional cost of $.25 per parcel for those parcels on both tax rolls. You want to know whether the county is limited to a fee equal to the additional costs it would incur, _i.e._ $.25 per parcel, or whether it may impose a fee equal to the cost that the independent school district would incur if it performed the functions for itself, _i.e._ $4.00 per parcel. We conclude that the county may charge a fee equal only to the additional costs that it incurs: in this example, $.25 per parcel.

---

3. Section 6.24 of the Tax Code permits a taxing unit to enter an Interlocal Cooperation Act contract to perform duties relating to the assessment or collection of taxes. Section 6.24 itself is silent as to the fee that may be charged. The Interlocal Cooperation Act, article 4413(32c), V.T.C.S., also is silent as to any fees that may be charged. Section 6.27 does not govern such a contract, because it specifically does not apply when assessing and collecting is performed pursuant to subdivision (4) of subsection (a) of section 6.23, i.e. when such services are performed by virtue of "an intergovernmental contract."

We think that a plain, common sense reading of subsection 6.27(a) requires such a construction. Subsection (b) of section 6.27 of the Tax Code provides:

> The county assessor-collector is entitled to a reasonable fee, <u>which may not exceed the actual costs incurred</u>, for assessing and collecting taxes for a taxing unit pursuant to Subdivisions (1) through (3) of Subsection (a) of Section 6.23 of this code. (Emphasis added.)

Subsection (a) of section 311.011 of the Government Code provides: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." Reading the underscored phrase above in context and according to rules of common usage, we conclude that the phrase refers to the costs incurred <u>by the county tax assessor-collector</u> for performing assessment and collection functions for another taxing unit. If the legislature had intended that the county tax assessor-collector impose a fee equal to the cost that would have been incurred by the contracting taxing unit if it had performed the services for itself, it explicitly would have so provided.

We are required, moreover, to construe a statute or code provision so as not to ascribe to the legislature intent to do an unreasonable thing if the provision reasonably is susceptible of such a construction. <u>State Highway Dep't v. Gorham</u>, 162 S.W.2d 934 (Tex. 1942); <u>Anderson v. Penix</u>, 161 S.W.2d 455 (Tex. 1942). The legislature clearly intended that taxing units in certain instances assess and collect taxes for other taxing units in order to promote efficiency and economy in the performance of governmental functions. It has permitted, or in some instances, required such consolidation of services. <u>See</u> Tax Code, §§ 6.23, 6.24, 6.26. Because one of the means by which the legislature effected such a consolidation is by Interlocal Cooperation Act contract, we think that it is reasonable to assume that the legislature intended that the Tax Code provisions promote the same public policy as the Interlocal Cooperation Act itself promotes. The purpose of the Interlocal Cooperation Act is set forth in that act's first section:

> It is the purpose of this Act <u>to improve the efficiency and effectiveness of local governments</u> by authorizing the fullest possible range of intergovernmental

contracting authority at the local level including contracts between counties and cities, between and among counties, between and among cities, between and among school districts, and between and among counties, cities, school districts, and other political subdivisions of the state, and agencies of the state. (Emphasis added.)

V.T.C.S. art. 4413(32c), § 1.

Under our construction of "actual costs," the county would be reimbursed only for the additional expenses that it incurs for assessing and collecting taxes for another taxing unit, while that taxing unit would save a portion of the expenses that it would incur were it to perform such functions for itself. On the other hand, if we were to construe "actual costs" in section 6.27 to refer to the costs incurred by the taxing units when they assess and collect their own taxes, the county would receive a fee greater than the cost that it had actually incurred, while the other taxing unit would incur the same expense that it would have incurred had it performed those functions for itself. We fail to see how such a construction would promote public policy. Accordingly, we conclude that the underscored phrase of subsection (b) of section 6.27 refers to the additional costs incurred by the county tax assessor-collector to perform such functions.

You both ask whether the county tax assessor-collector, the county commissioners court, or the taxing units for which the county performs assessment and collection functions is empowered to determine just what are the "actual costs" incurred. Specifically, Mr. Kuboviak asks:

Pursuant to Section 6.27 of the Texas Property Tax Code, who determines the amount of actual costs and fees to be charged[?]

Ms. Haverkamp asks:

When the responsibility of assessing and collecting property taxes for taxing units in the Appraisal District for a County is transferred from the Appraisal District to the County Tax Assessor-Collector office by a countywide election pursuant to § 6.26 of the Property Tax Code, does the County Commissioners Court or do the individual taxing units approve that portion of the

budget of the Tax Assessor-Collector which relates to the assessing and collecting of property taxes?

It has been suggested that, based upon Attorney General Opinion JM-833 (1987), the county tax assessor-collector is empowered by the Texas Constitution to determine the "actual costs" involved. We disagree.[4] In Attorney General Opinion JM-833, we concluded that section 6.26 of the Tax Code, which purported to authorize the electorate to divest the county tax assessor-collector of the duties of assessing and collecting taxes for the county, was unconstitutional. We so concluded because article VIII, section 14, of the Texas Constitution placed in the county tax assessor-collector "all the duties with respect to assessing property for the purpose of taxation and of collecting taxes [for the county], _as may be prescribed by the Legislature_." (Emphasis added.) The opinion held that the language of

---

4. It also has been suggested that section 6.24 of the code confers joint authority on the commissioners court and the county tax assessor-collector to determine what are "actual costs." The purportedly relevant language of section 6.24 provides:

> (b) _The commissioners court with the approval of the county assessor-collector_ may contract as provided by the Interlocal Cooperation Act with the governing body of another taxing unit in the county or with the board of directors of the appraisal district for the other unit or the district to perform duties relating to the assessment or collection of taxes for the county. (Emphasis added.)

We noted in the third footnote that the reach of section 6.27 specifically does not extend to a section 6.24 contract, because section 6.27, by its terms, does not apply when assessing and collecting is performed pursuant to subdivision (4) of subsection (a) of section 6.23, i.e. when such services are performed pursuant to "an intergovernmental contract." Therefore, reliance upon section 6.24 of the code in support of the proposition that a county tax assessor-collector may determine, whether jointly or independently, what are "actual costs" as set forth in section 6.27 of the code is misplaced.

section 14 quoted  above should be  construed to mean  "`all
duties with respect  to assessing property  for purposes  of
taxation and  of  collecting  taxes' that the legislature
prescribes are to be  performed by that officer."   Attorney
General Opinion JM-833 (1987) at 4.

We do not construe "all  duties" to encompass the  duty
to determine the "actual costs" of performing such services,
because the legislature  has not  imposed such  a duty  upon
county tax  assessor-collectors.   No  provision  of  either
chapter 26  of the  Tax Code,  which sets  forth the  duties
comprising assessment, or chapter 31 of the Tax Code,  which
sets forth  the duties  comprising collection,  confers  any
such authority on the county tax assessor-collector.   There
are, however, statutory provisions that we think  implicitly
confer such authority on the county commissioners court.

Article  V,  section  18,  of  the  Texas  Constitution
provides in relevant part:

> The County Commissioners so chosen, with  the
> County  Judge  as  presiding  officer,  shall
> compose the County Commissioners Court, which
> shall exercise such  powers and  jurisdiction
> over all county business, as is conferred  by
> this Constitution and the laws of the  State,
> or as may be hereafter prescribed.

Among those powers conferred by the laws of this  state
is the power  to determine  and adopt  the county's  budget.
The determination  and  adoption  of the  county  budget  is
governed by  chapter  111  of  the  Local  Government  Code.
Subchapters A, B, and  C of chapter  111 govern counties  of
different population levels.   Each subchapter requires  the
counties to prepare itemized budgets. See Local Gov't Code,
§§ 111.003,  111.004,  111.033, 111.034,  111.062,  111.063.
Each empowers the county  commissioners court to require  of
the various other county officers any information  necessary
for the proper preparation of the county budget. See  Local
Gov't Code §§  111.005, 111.036,  111.065.  Each  subchapter
rests authority to adopt  the budget with the  commissioners
court of  each respective  county.  See Local  Gov't  Code,
§§ 111.008, 111.039, 111.068.

Pursuant  to  his  responsibility  to  submit  to  the
commissioners court  information  necessary for  the  proper
preparation of the county budget, the tax assessor-collector
has  the  authority  to   make  the  initial  determination
regarding what are "actual  costs" under subsection  6.27(b)
of the Tax Code.  Because the authority to prepare and adopt

the budget necessarily includes the authority to determine and budget the expenditures for the various counties' offices, we conclude that the county commissioners court is empowered to determine as a final matter, in conjunction with its authority regarding the budget, what are "actual costs" incurred by the county pursuant to section 6.27 of the code.

## S U M M A R Y

The phrase "actual costs" set forth in section 6.27 of the Tax Code refers to those costs that the collecting taxing unit or appraisal district incurs over and above the cost that it would incur if it were not collecting for another taxing unit. The county commissioners court has implicit authority, derived from explicit authority regarding the preparation and adoption of a county's budget conferred by chapter 111 of the Local Government Code, to determine as a final matter what are the "actual costs" incurred by the county pursuant to section 6.27 of the Tax Code.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General